UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

------------------------------- x
SOVEREIGN BANK, N.A.,              :
                                   :
    Plaintiff,                     :
                                   :   Civ. A. No. CA 12- 146
    v.                             :
                                   :
KEVIN O'BRIEN,                     :
                                   :
    Defendants.                    :
------------------------------- x

## COMPLAINT

Plaintiff Sovereign Bank, N.A., by and through its undersigned attorneys, alleges as follows against Defendant Kevin O'Brien:

### Parties

1.  Plaintiff Sovereign Bank, N.A. (the "Bank") is a national bank with its main office at 824 North Market Street, Suite 100, Wilmington, Delaware.[1]

2.  Defendant Kevin O'Brien ("Mr. O'Brien") is an individual residing at 1020 Francisco Street, San Francisco, California.

### Jurisdiction and Venue

3.  This Court has subject matter jurisdiction under 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.  Mr. O'Brien has consented to the jurisdiction of this Court.

---

[1] On January 26, 2012, Sovereign Bank converted from a federal savings bank to a national association. In connection with the change in its charter, Sovereign Bank's name was changed to "Sovereign Bank, N.A."

5. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) as a substantial part of the events giving rise to the claim occurred in this District. Further, Mr. O'Brien has consented to the jurisdiction of this Court.

## Background Facts

6. On or about October 9, 2007, the Bank entered into a certain Revolving Credit and Term Loan Agreement with Global Broadcasting of Southern New England LLC d/b/a WLNE ("Borrower"), a true and correct copy of which is attached hereto as Exhibit A (the "Loan Agreement"), pursuant to which the Bank extended certain loans, advances and other financial accommodations to the Borrower in order to finance (a) the Borrower's purchase of substantially all of the assets of WLNE-TV, the ABC-affiliated television station for the State of Rhode Island and Bristol County, Massachusetts, (b) certain transaction costs related thereto and (c) the working capital needs of the Borrower (collectively, the "Loan").

7. The Loan is evidenced by (a) a certain Secured Promissory Note, dated as of October 9, 2007, made by the Borrower in favor of the Bank in the principal face amount of $2,000,000.00 (the "Revolving Note") and (b) a certain Secured Promissory Note, dated as of October 9, 2007, made by the Borrower in favor of the Bank in the principal face amount of $8,500,000.00 (the "Term Note"), true and correct copies of which are attached hereto as Exhibit B and Exhibit C, respectively.

8. As security for the Loan, the Borrower and the Bank also entered into (a) a certain Open-End Mortgage and Security Agreement to Secure Present and Future Loans under Chapter 25 of Title 34 of the General Laws (the "Rhode Island Mortgage"), (b) a certain Collateral Assignment of Leases and Rents (the "Rhode Island Collateral Assignment"), (c) a certain Mortgage and Security Agreement (the "Massachusetts Mortgage"), (d) a certain Collateral

Assignment of Leases and Rents (the "Massachusetts Collateral Assignment"), (e) a certain Security Agreement (the "Security Agreement"), (f) a certain Trademark Security Agreement (the "Trademark Agreement"), and certain other documents and instruments required in connection with the Loan Agreement, true and correct copies of which are attached hereto as Exhibit D, Exhibit E, Exhibit F, Exhibit G, Exhibit H and Exhibit I, respectively (collectively, the "Security Documents").

9. Pursuant to the terms of the Security Documents, the Borrower granted the Bank a lien on the Borrower's real and personal property, including (a) the Borrower's real property located at 66 Lafayette Road, Tiverton, RI, which houses the Borrower's analog transmitter, along with an assignment of leases and rents arising therefrom, (b) the Borrower's real property located at 430 County Street, New Bedford, MA (and all improvements and personal property thereon), along with an assignment of leases and rents arising therefrom, (c) all of the Borrower's personal property, including (i) accounts and accounts receivable, (ii) chattel paper, (iii) inventory, (iv) equipment, (v) fixtures, (vi) instruments, (vii) any substitutions for, replacements of and additions and accessions to any of the foregoing, and all of proceeds thereof, and (viii) trademarks, trade names, service marks, designs, logos, trade dress, other source identifiers, and all registrations of the foregoing (collectively, the "Collateral").

10. The Loan Agreement and Security Documents constitute the legal, valid and binding obligations of the Borrower, enforceable in accordance with their terms, and the liens and security interests granted to the Bank under the Security Documents are valid, binding, perfected, enforceable first priority liens on, and security interests in, substantially all of the assets of the Borrower.

11. Pursuant to the Loan Agreement and Security Documents and in reliance upon the O'Brien Guaranty (as defined below) executed by Mr. O'Brien, the Bank advanced the original principal sum of $10,500,000.00 to the Borrower (the "Loan") and the Borrower, among other things, promised to repay such amount, with interest, as more specifically set forth in the Notes.

12. The obligations owed by the Borrower pursuant to the Loan Agreement and Security Documents are referred to herein as the "Obligations."

13. The Borrower failed to meet its Obligations by, *inter alia,* failing to make payments to the Bank.

14. The Borrower's failure to meet its Obligations constituted a default under the terms of the Loan Agreement and Security Documents. The Borrower defaulted as of June 30, 2009.

15. The Bank sent a demand letter to the Borrower on September 10, 2009 ("the Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as Exhibit J.

16. The Borrower has failed to cure the events of default or to repay the Loan.

17. After the Borrower defaulted under the Loan Agreement and Security Documents, the Borrower and the Bank began workout and restructuring discussions in earnest. Representatives of the Bank and the Borrower's principal, Mr. O'Brien, met and had discussions in an effort to avoid a liquidation proceeding for the Borrower.

18. After workout discussions between the parties proved to be unproductive, the Borrower informed the Bank that it was making preparations for a proposed Chapter 11 bankruptcy filing, and all parties, in turn, began necessary preparations for such Chapter 11 case.

19. The Bank's counsel worked diligently and cooperatively with the Borrower's counsel in connection with the contemplated Chapter 11 bankruptcy filing to negotiate the appropriate cash collateral stipulation and related matters.

20. On July 22, 2010, the Bank's counsel received a telephone call from the Borrower's counsel who indicated that Mr. O'Brien had decided that he would not provide the Borrower financing that would be necessary for the contemplated Chapter 11 reorganization proceeding. The Borrower, through its sole member, had instructed its counsel to file a receivership action and was seeking the appointment of a receiver to liquidate the Borrower, rather than pursue the Chapter 11 reorganization that all parties and counsel had been working on based on Mr. O'Brien's representations to the Bank.

21. On or about July 26, 2010, Mr. O'Brien caused a Petition for the Appointment of a Receiver to be filed with the Superior Court of Rhode Island.

22. On or about July 29, 2010, Matthew J. McGowan, Esq. (the "Receiver") was appointed Temporary Receiver of the Borrower.

23. On or about August 18, 2010, the Receiver was appointed Permanent Receiver of the Borrower. Pursuant to the Order Appointing Permanent Receiver, the Receiver was empowered to, *inter alia*, sell at private sale or by public auction real property or personal property of the Borrower.

24. The Receiver continued the operations of the Borrower throughout the receivership. The Bank and undersigned counsel worked closely and cooperatively with the Receiver to stabilize the situation at the Borrower and to take steps to preserve the value of the assets so that the Receiver could successfully sell the Borrower and its assets while maintaining the Borrower as an operating entity.

25. On or about November 1, 2010, the Bank filed a Motion with the Superior Court to Establish Secured Claim and Allow Credit Bidding.

26. On November 22, 2010 the Superior Court allowed the Bank's Motion to Establish Secured Claim and Allow Credit Bidding. In so doing, it found that, as of November 1, 2010, the Borrower owed the Bank the sum of **$10,161,818.75** with respect to the Bank's secured claim. A true and correct copy of the Court's November 22, 2010 Order is attached hereto as Exhibit K.

27. The Bank's secured claim against Global Broadcasting of **$10,161,818.75** was comprised of the following:

- the sum of **$989,511.24** on the Revolving Note;
- the sum of **$8,985,264.84** on the Term Note; and
- the sum of **$187,042.67** in accumulated fees related to Global Broadcasting's default on the two notes.
  - On the Revolving Note, the balance owed of $989,511.24 included:
    - $910,000.00 in principal and $79,511.24 in interest; and
    - The interest rate on the Revolving Note is 7.75% and the per diem is $195.90.
  - On the Term Note, the balance owed of $8,985,264.84 included:
    - $8,287,500.01 in principal and $697,764.83 in interest; and
    - The interest rate on the Term Note is 7.54719% and the per diem is $1,737.42.
  - The balance owed of $187,042.67 in accumulated fees included:
    - $90,062.28 in late fees on the Term Note;
    - $6,388.31 for asset searches;
    - $10,500 for appraisals;

- o $4,000 for business valuations; and

- o $76,092.08 for the legal fees of Attorney Richard Gemma and Nutter McClennen & Fish LLP.

28. On March 29, 2011, the Superior Court approved the sale of the Borrower and substantially all of its assets as a going concern to Citadel Communications, LLC of Bronxville, New York. A true and correct copy of the Court's March 29, 2011 Order is attached hereto as Exhibit L. The sale closed on June 1, 2011.

29. In accordance with Rhode Island law, the Obligations have been reduced by the amount of proceeds realized from the sale of assets and other distributions from the Borrower's estate.

30. The Borrower's estate has been almost completely liquidated. The Receiver has represented that the Bank may expect to receive only about $10,000 from certain outstanding receivables, the remaining assets of the Borrower's estate. Accordingly, the Bank has pursued and exhausted all of its available remedies against the Borrower.

31. The Bank has demanded payment of the Borrower's remaining Obligations from Mr. O'Brien. Notwithstanding his Guaranty, Mr. O'Brien has refused or otherwise has failed to pay the Borrower's remaining Obligations.

## COUNT I
### (Action on Guaranty Against Kevin O'Brien)

32. The Bank incorporates its allegations in paragraphs 1 through 31 as if again set forth in full.

33. In connection with the Loan, on or about October 9, 2007, Mr. O'Brien executed a Guaranty in favor of the Bank (the "O'Brien Guaranty"). A true and correct copy of the O'Brien Guaranty is attached hereto as Exhibit M.

34. Pursuant to the O'Brien Guaranty, Mr. O'Brien, absolutely and unconditionally guaranteed to the Bank, *inter alia*, the punctual payment in full (and not merely the collectability), at Bank's Address, as and when due (whether by acceleration or otherwise) of all Obligations of the Borrower requiring payment, not to exceed $3 million plus all expenses of the Bank in connection with Bank's exercise, preservation or enforcement of any of its rights, remedies or options under the O'Brien Guaranty.

35. As of February 15, 2012, the Borrower owed the Bank the sum of **$6,427,058.50** with respect to its Obligations. Those Obligations were constituted as follows:

- the sum of **$191,734.70** on the Revolving Note;
- the sum of **$5,875,751.83** on the Term Note; and
- the sum of $359,571.97 in accumulated fees related to the Borrower's default on the two notes.
    - On the Revolving Note, the balance owed of **$191,734.70** include:
        - **$58,658.85** in principal and **$133,075.85** in interest; and
        - The interest rate on the Revolving Note is **7.75%** and the per diem is **$12.63**
    - On the Term Note, the balance owed of **$5,875,751.83** include:
        - **$4,534,744.83** in principal and **$1,341,007.00** in interest; and
        - The interest rate on the Term Note is **7.54719%** and the per diem is **$950.68**
    - The balance owed of **$359,571.97** in accumulated fees include:
        - **$170,353.30** in late fees on the Term Note;
        - **$6,388.31** for asset searches;
        - **$10,500** for appraisals;
        - **$4,000** for business valuations; and

- o **$168,330.36** for the legal fees of Attorney Richard Gemma and Nutter McClennen & Fish LLP.

36.  Mr. O'Brien, as Guarantor, is obligated to the Bank for the Obligations that the Borrower has failed to meet, not to exceed $3 million plus all expenses of the Bank in connection with Bank's exercise, preservation or enforcement of any of its rights, remedies or options under the O'Brien Guaranty.

**WHEREFORE,** Plaintiff Sovereign Bank demands judgment against Defendant Kevin O'Brien as prayed in Count 1, and, where applicable, for damages as may be proved at trial, plus interest, costs and attorney's fees.

Respectfully submitted,

SOVEREIGN BANK, N.A.

By its attorneys,

Richard S. Rosenstein
RIBA #338
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210-2604
(617) 439-2563
rrosenstein@nutter.com

*Of counsel:*

James F. Coffey (Mass. BBO #552620)
Benjamin L. Mack (Mass. BBO #661590)
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2863
jcoffey@nutter.com
bmack@nutter.com

Date: March 2, 2012