UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SOVEREIGN BANK, N.A.,
        Plaintiff,

v.                                                                          C.A. No. 12-146 ML

KEVIN O'BRIEN,
        Defendant.

MEMORANDUM AND ORDER

This matter arises out of Plaintiff's, Sovereign Bank, N.A. ("Sovereign"), efforts to enforce a guaranty, executed by Defendant, Kevin O'Brien ("O'Brien") in favor of Sovereign. Sovereign has filed a three-count complaint against O'Brien alleging that O'Brien has failed to meet his payment obligations under the guaranty, that he breached the guaranty by disposing of assets, and that he committed fraud. O'Brien has denied the allegations and he asserts counterclaims against Sovereign. The matter is now before the court on the parties' cross-motions for summary judgment.[1]

I.  Background

On October 9, 2007, Sovereign loaned Global Broadcasting of Southern New England, LLC ("Global") $10,500,000 ($8,500,000 as a term loan and $2,000,000 as a revolving loan) in connection with Global's purchase of the assets of WLNE-TV, a television station serving Rhode

---

[1] Sovereign has filed a motion for partial summary judgment on count 1 of the complaint (enforcement of the guaranty) and on O'Brien's counterclaims. O'Brien has moved for summary judgment on all counts in the complaint. The sole focus of O'Brien's memorandum, however, is count 1. O'Brien makes no effort to explain why summary judgment is warranted on counts 2 and 3; thus any such argument is waived. United States v. Zannino, 895 F.2d 1 (1st Cir. 1990). In addition, by failing to respond to Sovereign's motion on his counterclaims, O'Brien has also waived argument on the counterclaims. Id.

Island and Bristol County, Massachusetts.  O'Brien executed a personal guaranty in favor of Sovereign.  By its terms the guaranty is governed by Rhode Island law.

For purposes of determining the cross-motions, the pertinent provisions of the guaranty are as follows:

> ● Sovereign "is unwilling to extend credit to [Global] unless it receives the guaranty of [O'Brien] covering the [o]bligations, as hereinafter defined."

Defendant's Motion for Summary Judgment, Exhibit A at pg. 1; Docket # 38-2 ("Exhibit A").

> ● [R]ecourse against Guarantor . . . shall not be effected unless and until [Sovereign] <u>has exercised all available remedies against Borrower, including the remedy of foreclosure with respect to any and all assets of Borrower which have been pledged to [Sovereign] as collateral for repayment of the [o]bligations</u>. [N]o effort to collect or effect recourse against Guarantor shall be permitted under the terms of this Guaranty or otherwise, <u>unless or until [Sovereign] shall have pursued and exhausted all of its available remedies against Borrower</u> . . . .

<u>Id.</u> at pg. 3 ¶ 2 (emphasis added).

> ● "Guarantor hereby further expressly waives . . . any defenses available to a guarantor under the laws of Rhode Island . . . [and] all errors and omissions in connection with [Sovereign's] administration of the [o]bligations."

<u>Id.</u> at pg. 7 ¶ 4.

> ● "Guarantor acknowledges that [Sovereign] is relying on all of the waivers contained throughout this Guaranty in creating and continuing the [o]bligations, and that <u>these waivers are a material part of the consideration</u> to [Sovereign] for creating and continuing the [o]bligations."

<u>Id.</u> at pg. 8 ¶ 4 (emphasis added).  The guaranty also provided that if an event of default occurred, Sovereign could declare all obligations due and payable.  O'Brien's liability under the guaranty is limited to $3,000,000.

On or about March 31, 2009, the Global loan was transferred to Sovereign's Managed Assets Division ("Division").  The Division manages poorly performing loans.  On June 30,

2

2009, Global defaulted on the loan. On September 10, 2009, Sovereign declared the loan immediately due and payable.

In the fall of 2009, O'Brien informed Sovereign that a third party was interested in purchasing Global's analog television transmission tower located in Tiverton, Rhode Island for $1,035,000. Sovereign held a security interest in the tower. Rather than using all of the proceeds from the sale to pay down the balance of the loan, O'Brien proposed that approximately 25% of the proceeds go back to the station to fund ongoing business operations. Sovereign rejected O'Brien's proposal and the tower sale was not consummated.

Although the particulars of statements purportedly made by the parties are in dispute, it is undisputed that at various times after the loan was transferred to the Division, the parties discussed forbearance. In the end, although a formal forbearance agreement was never executed, Sovereign did not take any legal action against Global before Global petitioned itself into receivership on July 26, 2010.

The Rhode Island Superior Court appointed a permanent receiver who was empowered, among other things, to conduct the business of Global and to sell its assets. On November 1, 2010, Sovereign filed a motion to establish a secured claim and to allow credit bidding. On November 22, 2010, the Superior Court granted Sovereign's motion thereby establishing a secured claim against those assets in which Global had granted Sovereign a lien, pledge, mortgage or other encumbrance. The Superior Court authorized Sovereign to bid up to the full amount and extent of its claim in connection with the proposed sale of collateral. On January 20, 2011, the receiver filed a motion for a proposed sale process. O'Brien objected. On February 7, the Superior Court overruled O'Brien's objection and granted the motion.

On February 11, 2011, the receiver filed a motion to sell. Again O'Brien objected. The Superior Court overruled O'Brien's objections and, on March 29, 2011, the court issued an order granting the motion to sell. The Superior Court found, among other things, that (1) prior to the receiver's appointment there was an immediate danger that Global's assets would be wasted, lost, or dissipated; (2) the receiver marketed the assets in a fair and commercially reasonable manner; (3) the terms and conditions of the sale were fair and commercially reasonable; and (4) the sale represented the highest and best terms obtainable for the sale of the assets. On June 1, 2011, substantially all of Global's assets were sold. O'Brien appealed the sale order to the Rhode Island Supreme Court, however, on June 22, 2011, O'Brien voluntarily dismissed that appeal. As of February 15, 2012, Global owed Sovereign $6,427,058.50.

## II.  Standard of Review –  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party must point to specific facts demonstrating a trial worthy issue. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991). The legal

standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria International Group, Inc. v. Ferre Development, Inc., 241 F.3d 103 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern University, 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

### III.  Analysis

In construing a guaranty, a court looks to the guaranty's "language while giving due consideration to its subject matter, the relative conditions of the parties, and their probable intent." Allied Plywood Co. v. Pearson, 395 A.2d 716, 718 (R.I. 1978). Unless a plain and unambiguous intent to the contrary is manifested, words used in a contract are assigned their ordinary meaning. Cerilli v. Newport Offshore, Ltd., 612 A.2d 35 (R.I. 1992). If "the guarantor, by the use of ambiguous language in his guaranty, renders it susceptible of two or more equally reasonable interpretations, that is to be adopted which makes most strongly against him." Allied, 395 A.2d at 718 (internal quotation marks and citation omitted).

It is undisputed that there was a default by Global and that there is a deficiency owed to Sovereign. The parties agree that the only issue to be decided by the court with respect to enforcement of the guaranty is whether Sovereign "exercised all available remedies against Borrower, including the remedy of foreclosure" before pursuing O'Brien on the guaranty. Exhibit A at pg. 3 ¶ 2. Sovereign contends that it exercised all of its available remedies against Global by participating in the receivership proceeding. O'Brien, however, contends that Sovereign did not exhaust all of its available remedies against Global.

O'Brien argues Sovereign did not sufficiently forbear and that it was commercially unreasonable for Sovereign to reject the sale of the tower. O'Brien posits that it would have been commercially reasonable for Sovereign to approve the sale of the tower, *according to his conditions*, and use approximately $250,000 of the proceeds to inject additional capital into Global "to enable Global to get to the 2010 election season. . . ." O'Brien's Memorandum in Support of Summary Judgment at 7; Docket #38-1. After infusion of the additional capital, O'Brien argues, it would have been commercially reasonable for Sovereign (1) *to continue* to forbear to allow Global the time to realize the advertising revenue benefit associated with the 2010 political season and, (2) *to continue to forbear* after Global recognized the advertising revenue to allow more time to expose Global to the marketplace for sale as a going concern. All this, O'Brien argues, would have ensured that Global could have been sold, in early 2011, at a maximum going concern value which would have resulted in Global's repayment of the underlying loan.

O'Brien is a sophisticated businessman and he was represented by able counsel in negotiating the guaranty. The language of the guaranty is plain and unambiguous. The guaranty provides that before pursuing O'Brien, Sovereign must "exercise[] all available remedies against Borrower, including the remedy of foreclosure . . . ." Exhibit A at pg. 3 ¶ 2. The record reflects that Sovereign, without any legal obligation to do so, refrained from pursuing its remedies on the loan for more than one year. O'Brien argues, however, that the de facto period of forbearance was not sufficient. O'Brien's contention that Sovereign had to exhaust its "remedy" of forbearance to allow Global to reach its maximum going concern value (by forbearing for a prolonged period to allow Global to recognize political advertising revenue and then more time

to be exposed to the marketplace for sale as a going concern) is belied by the plain language of the guaranty.

The guaranty does not require Sovereign to forbear, and contrary to O'Brien's assertions, forbearance is not a remedy.[2] Forbearance is the "act of refraining from enforcing a right, obligation or debt . . . [t]he act of tolerating or abstaining." Black's Law Dictionary 717 (9th ed. 2009); see also Chrysler Financial Co., LLC v. Cloutier, 785 So. 2d 255, 261 (La. Ct. App. 2001) (Pickett, J., dissenting) (forbearance is "nothing more than a tacit promise not to sue. . ."); Hammel v. Ziegler Financing Corp., 334 N.W.2d 913, 916 (Wis. Ct. App. 1983) ("forbearance means nothing more, as between a debtor and creditor, than an agreement by the creditor not to attempt collection of a debt. . . ") (internal quotation marks and citation omitted); Fred H. Moran Construction Corp. v. Elnaggar, 441 So. 2d 260, 263 (La. Ct. App. 1983) ("[f]orbearance exists when a creditor acquiesces in or tolerates substandard performance of an obligation by [a] debtor without exercising his rights to enforce the obligation . . . ") (internal quotation marks and citation omitted).

A remedy, on the other hand, is a "means of enforcing a right. . . ." Black's Law Dictionary at 1407; see also Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 445 (2001) (a remedy is "the means employed to enforce a right, or redress an injury") (internal quotation marks and citation omitted). Moreover, there is no authority for the proposition that a "bank owe[s] . . . a duty of reasonable forbearance in enforcing its creditor's remedies." Wienke v. Everhome Mortgage Co., C 10-CV-05943 NJV, 2011 WL 632950 at *8 (N.D. Cal. Feb. 11,

---

[2]In his memorandum supporting his objection, O'Brien argues that "[f]orbearance is a [r]emedy." Defendant's Memorandum in Support of Objection at 3; Docket 65-1.

2011) (internal quotation marks and citation omitted); see also Woods Corporate Associates v. Signet Star Holdings Inc., 910 F. Supp. 1019, 1034 (D.N.J. 1995) ("a creditor's clear duty to act in good faith does not encompass compromising its contractual rights in order to aid its debtor") (internal quotation marks and citation omitted).  By petitioning itself into receivership, Global prevented Sovereign from bringing suit directly against Global on the underlying loan.  Sovereign then exercised all available remedies against Global by fully participating in the receivership proceeding.

Finally, with respect to O'Brien's other arguments, the guaranty provides that O'Brien "expressly waives . . . any defenses available to a guarantor under the laws of Rhode Island." Exhibit A at pg. 7 ¶ 4.  In fact, O'Brien acknowledged that Sovereign was "relying on all of the waivers contained throughout [the] Guaranty in creating and continuing the [o]bligations, and that [the] waivers are a material part of the consideration to [Sovereign] for creating and continuing the [o]bligations." Id. at pg. 8 ¶ 4.

Although the Rhode Island Supreme Court has not spoken on the issue of a waiver in a guaranty, other courts have upheld waiver of defense provisions in a guaranty.  "The case law is replete with examples of guarantors attempting to traverse [ ] standard-form guaranty language. The courts, however, have uniformly upheld the 'waiver-of-defenses' language." United States v. Mallet, 782 F.2d 302, 303 (1st Cir. 1986); see also HSBC Realty Credit Corp. (USA) v. O'Neill, 12-11733-RGS, 2013 WL 362823, at *4 n.7 (D. Mass. January 30, 2013) (noting that contractually based defenses and counterclaims were barred by the express waiver provision in a guaranty); HSH Nordbank Ag New York Branch v. Swerdlow, 672 F. Supp. 2d 409 (S.D.N.Y. 2009) (guarantor cannot assert defenses that it expressly waived in the guaranty agreement),

8

aff'd, 421 Fed. App'x 70 (2d Cir. 2011).

## IV.  Conclusion

In the end, the clear and unambiguous language of the guaranty controls.  Global defaulted; there is a deficiency; Sovereign pursued its remedies in accordance with its obligations under the guaranty.  O'Brien is therefore liable on the guaranty.  Sovereign's motion for partial summary judgment on count 1 is granted;[3] O'Brien's motion for summary judgment is denied.

The guaranty also provided that O'Brien pay attorneys' fees and costs related to Sovereign's exercise of its rights under the guaranty.  At oral argument, Sovereign requested attorneys' fees.  Sovereign is directed to file a detailed memorandum (with time records) supporting its request on or before March 26, 2013.  O'Brien will have until April 9, 2013, to file a response, if any, to the request.

SO ORDERED

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
March 12, 2013

---

[3]The Court also grants Sovereign's motion for summary judgment on O'Brien's counterclaims for the reasons stated in this decision and for the reasons stated in Sovereign's memorandum in support of its motion for summary judgment.